## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WALLACE B. RODERICK REVOCABLE
LIVING TRUST, Wallace B. Roderick,
Trustee, on behalf of itself and JOHN W.
FITZGERALD, on behalf of himself and all
others similarly situated,

        *Plaintiff,*

  vs.

OXY USA, Inc.,

        *Defendant.*

Case No. 12-1215-EFM-GEB

## MEMORANDUM AND ORDER

Plaintiffs Wallace B. Roderick Revocable Living Trust and John W. Fitzgerald owned royalty interests in wells from which Defendant OXY USA, Inc. ("OXY") produced and marketed gas and its constituent products. Plaintiffs claim they were underpaid in royalty fees by OXY. Before the case was removed to this Court, the District Court of Kearny County, Kansas certified a plaintiff class of royalty owners that comprises approximately 1600 wells and 2200 leases. OXY now moves the Court to decertify the class (Doc. 189). Specifically, OXY asserts that Plaintiffs do not satisfy the commonality and adequacy requirements of Rule 23(a) or the predominance requirement of Rule 23(b). For the reasons stated below, the Court grants OXY's motion to decertify.

## I.   Factual and Procedural Background

A brief explanation of Kansas oil and gas law is required in order to understand the Plaintiffs' claim. Under Kansas law, oil and gas leases impose on the operator—OXY in this case—an implied duty to market the minerals produced.[1] Corollary to this implied duty to market is the marketable condition rule,[2] which "requires operators to make gas marketable at their own expense."[3] These duties can be contractually disclaimed.[4] If the duties were not disclaimed in this case, OXY would have been required to make the raw gas marketable and to bear the accompanying costs. Steps taken to make raw gas marketable often include gathering, compression, dehydration, treatment, and processing ("GCDTP") services.[5] But in other circumstances, gas may be marketable at the well.[6]

Plaintiffs filed this action in the District Court of Kearny County, Kansas on March 31, 2008, alleging that OXY improperly deducted from royalty payments those costs associated with rendering gas into marketable condition. While still in state court, Plaintiffs sought to certify a

---

[1] *See Fawcett v. Oil Producers, Inc. of Kan.*, 302 Kan. 350, 351, 352 P.3d 1032, 1034 (2015); *Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 331, 894 P.2d 788, 800 (1995).

[2] The Tenth Circuit actually refers to "the implied duty of marketability." But both Kansas courts and the Trust call this same duty the "marketable condition rule." *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1216 (10th Cir. 2013) ("Pursuant to [the implied duty of marketability], lessees are obligated to bear the full cost of production expenses, such as gathering, compression, dehydration, treatment, and processing, which are undertaken to transform gas into a marketable product.") (internal quotation marks omitted); *but see Fawcett*, 302 Kan. at 352, 352 P.3d at 1034-35 ("[T]he [marketable condition rule] requires operators to make gas marketable at their own expense."). Since Kansas law controls, and to avoid confusion, the Court will exclusively use the term "marketable condition rule" when referring to an operator's duty to make gas marketable at its sole expense.

[3] *Fawcett*, 302 Kan. at 352, 352 P.3d at 1034-35; *see also Sternberger*, 257 Kan. at 330, 894 P.2d at 799-800 ("The lessee has the duty to produce a marketable product, and the lessee alone bears the expense in making the product marketable.").

[4] *Sternberger*, 257 Kan. at 331, 894 P.2d at 800.

[5] *Roderick*, 725 F.3d at 1216.

[6] *E.g.*, *Sternberger*, 257 Kan. at 330, 894 P.2d at 800.

class of every royalty owner of wells in Kansas operated by OXY. This proposed class comprised approximately 1900 wells and 2300 oil and gas leases. OXY's Kansas wells connect to eight different gathering systems, and gas was delivered to five different plants for processing. OXY sold some of the raw gas at the wellhead pursuant to seventeen different purchase agreements. The rest of the gas was produced and marketed in the following ways. Most was subject to six separate processing agreements with third-party plants. There were also six gathering agreements, three transportation agreements, and two separate helium purchase agreements. Royalty payments were based on these several agreements, and thus, they varied accordingly.

Plaintiffs claim that these royalty payments all constitute underpayments in violation of the marketable condition rule. According to Plaintiffs, all of these transactions on which royalty payments were based took place before any GCDTP services had been performed on the gas. Therefore, they contend the royalty payments were based on prices for gas that was not in marketable condition. And thus, they argue that OXY did not solely bear the cost of making the gas marketable.

Even with such a large number of leases and OXY's various operating methods, the District Court of Kearny County noted that the question of whether the gas was in marketable condition at the wellhead was common to the class. The court opined that "[i]f the answer to the questions urged by Plaintiffs is 'yes.' OXY's processing deductions from royalties paid may be proper across-the-board. If not, the deductions may be improper as Plaintiffs contend." Ultimately, the court found that the issue of when OXY's gas reached marketable condition was common to the class. The court also found that Plaintiffs satisfied the requirements of

numerosity, typicality, adequacy, and predominance. Accordingly, the court certified the following class:

> All royalty owners in Kansas wells where OXY USA, Inc. (including its affiliated predecessors, and successors) is or was the operator (or, as a non-operator, separately marketed gas) who were paid royalties for gas from July 1, 2007 to the present.
>
> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); and (2) all presiding judge(s) together with their immediate family members.

In its order granting class certification, the court stated that "if, in the future, it appears that Plaintiffs' class definition is too broad, it can then be narrowed."

After the class was certified, the case was removed to this Court. Since then, the United States Supreme Court, the Tenth Circuit Court of Appeals, and the Kansas Supreme Court have each issued decisions that directly impact class certification analysis and Kansas oil and gas law.[7] Relying on these recent developments, OXY now moves to decertify the class.

## II.   Legal Standard

The Court has discretion under Rule 23(c)(1)(C) to amend an order that previously granted class certification.[8] This class was certified five years ago in state court. Relevant law has developed affecting both class certification analysis and oil and gas cases, and this Court is required to conduct a "rigorous analysis" before concluding that Rule 23's requirements have

---

[7] *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011); *Roderick*, 725 F.3d 1213; *Fawcett*, 302 Kan. 350, 352 P.3d 1032.

[8] *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010).

been satisfied.[9]  Because relevant law has developed since 2011, consideration of OXY's motion to decertify is proper here.[10]

Class action certification is governed by Rule 23 of the Federal Rules of Civil Procedure.[11]  The Court has broad discretion in deciding whether class certification is proper.[12]  To satisfy the requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy).  If these requirements are satisfied, the proposed class action must also fit within one of the categories in Rule 23(b).

In certifying this class, the state court found that the Plaintiffs satisfied the Kansas equivalent to Rule 23(b)(3).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  The requirements of Rule 23(b)(3) ensure that a class is sufficiently cohesive to warrant adjudication by representation.[13]  The predominance question asks whether common

---

[9] *Roderick*, 725 F.3d at 1217.

[10] *Cf. Schell v. OXY USA, Inc.*, 2013 WL 4857686, at * 3 (D. Kan. Sept. 11, 2013) (noting that Court would not grant motion to decertify where the defendant failed to show facts or law had materially changed or developed.").

[11] Here, the District Court of Kearny County applied Kan. Stat. Ann. § 60-223, which models Fed. R. Civ. P. 23.  Kansas courts traditionally follow federal court interpretation and application of Rule 23 in applying Kan. Stat. Ann. §60-233, so the Rule 23 standard and analysis applies.

[12] *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1085 (10th Cir. 2014).

[13] *Amchem Prods. v. Windsor*, 521 U.S. 591, 622-223 (1997).

issues are more prevalent or important than individual issues.[14] "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class."[15]

### III.   Analysis

OXY argues that due to changes in relevant law, "the class that was certified by the state court is not the class Plaintiffs now wish to pursue." Without speculating as to what Plaintiffs' wishes are, the Court mostly agrees: Plaintiffs' plausible road to recovery is different now than it was when this class was certified in 2011. The new road involves different issues, and those issues are not common to the class as currently certified.[16]

Plaintiffs allege that OXY breached the implied marketable condition rule by deducting from royalty payments costs associated with rendering gas in marketable condition. Whether OXY violated the marketable condition rule depends on when the gas in question reached marketable condition. Commonality would not exist if gas from various wells in the class reached marketable condition at different stages. "[I]f gas is in marketable condition at the mouth of 'Well A' but not 'Well B,' [the operator's] deductions likely would be proper for Well A's royalty owners, but a breach of the [marketable condition rule] for Well B's royalty owners."[17] Yet Plaintiffs argue that marketability is still a common issue because they argue that none of the gas in question was marketable until it had been processed, reached commercial grade, and was sold to a third party. And the state court accepted that contention, finding that the

---

[14] *CGC Holding*, 773 F.3d at 1087.

[15] *Roderick*, 725 F.3d at 1220.

[16] OXY also argues that Plaintiffs failed to demonstrate commonality with regard to duties implied throughout the class leases. Because the question of marketability is not common to the class, examination of the 2300 leases involved in this case is not necessary. If Plaintiffs bring back a more narrowly defined class in the future, the Court will consider the relevant implied duties at that time.

[17] *Roderick*, 725 F.3d at 1220.

issue of "whether OXY is solely responsible for all processing costs necessary to render the gas and its constituents commercially marketable" was common to the class. But in 2015, the Kansas Supreme Court decided *Fawcett v. Oil Producers, Inc. of Kansas*.[18] *Fawcett* provides greater guidance in the area of marketability. The Kansas Supreme Court rejected the proposition that marketability can be determined as a matter of law, and went on to hold that an operator's duty to make gas marketable is satisfied "when the operator delivers the gas to the purchaser in a condition acceptable to the purchaser in a good faith transaction."[19] This "good faith" qualification impacts the Court's commonality determination. *Fawcett* made clear that the question of marketability is a factual one. There is no "precise quality or condition at which gas becomes marketable."[20] Rather, the marketability of gas is "an open question" that depends on the parties' willingness to buy and sell it.[21] The gas in this case reached marketable condition when OXY delivered it in a condition acceptable to the purchaser.[22] Tying the marketability of gas to a precise quality or condition is no longer a viable theory of recovery.[23]

As noted above, OXY distributed gas from the wellhead in several different ways. There were purchase agreements, processing agreements, gathering agreements, and transportation agreements. OXY contends that each of these marketing arrangements constituted a good faith

---

[18] 302 Kan. 350, 352 P.3d 1032 (2015).

[19] *Id.* at 365, 352 P.3d at 1042.

[20] *Id.* at 363, 352 P.3d at 1041 (internal quotation marks omitted).

[21] *Id.*

[22] *Id.* at 365, 352 P.3d at 1042.

[23] Plaintiffs seem tacitly aware of this reality; their recent briefing focuses on the good faith of OXY's transactions and not the quality of the gas in question. But that was not the case when this class was certified, and Plaintiffs' Second Amended Complaint still contends that gas must be commercial grade before it is in marketable condition.

transaction of the gas at the wellhead. To prevail under a theory of breach of the marketable condition rule, Plaintiffs would need to illustrate that the gas was not in marketable condition at the wellhead, and thus, OXY's deductions were improper. To contest marketability, Plaintiffs would need to challenge OXY's contention that in its various wellhead agreements, OXY was delivering gas in a condition acceptable to the purchaser in a good faith transaction.[24] Given this framework, the current class does not satisfy Rule 23(a)(2). The question of when gas in this case reached marketable condition is not "of such a nature that it is capable of classwide resolution."[25] Instead, that determination would require individual inquiries into each marketing contract to see if under *Fawcett*, the gas was in marketable condition.

In response, Plaintiffs argue that class certification is still proper because 99% of the gas in this class was marketed via gathering or processing agreements, not purchasing agreements. Plaintiffs contend that the 1% of gas that was marketed through purchasing agreements is insufficient to destroy class certification. But a class "must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated."[26] The proper course is not for the Court to ignore non-conforming class members; rather, the proper course is for non-conforming parties to be removed from the class.

As concerns the other 99%, that gas was still distributed through several separate gathering and processing agreements. These agreements could very well involve common issues that would allow for one or several class actions, but certain showings must be made first. For

---

[24] *Id.* at 365, 352 P.3d at 1042.

[25] *Dukes*, 564 U.S. at 350.

[26] 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760, 142-44 (3d ed. 2005).

example, if Plaintiffs challenge the good faith of the transaction, the agreements would have to be so uniform in substance and formation that their good faith could be determined in a single stroke.[27] Otherwise, a class action challenging the good faith of a transaction would be limited to wells subject to a single agreement.

However Plaintiffs choose to challenge OXY's claim that gas was marketable at the wellhead, determination of that claim must be common throughout the class. That is to say, the wellhead agreements must be so uniform that the question of whether the gas was marketable is capable of classwide resolution.[28] But such a showing would have to start with evidence and allegations related to the individual arm's length transactions themselves. If Plaintiffs can illustrate that the question of marketability, as defined by *Fawcett*, is common to a given class of royalty owners, then a class action may be proper. But those allegations were not made when this class was initially certified, and are not made here. The class as presently constituted is improper. OXY's motion to decertify is granted.[29]

Because the class has been decertified, the Court also denies as moot Plaintiffs' motions for summary judgment that were filed on behalf of the class (Docs. 192, 194 & 196).[30] Additionally, OXY filed a motion to strike Plaintiffs' reply briefs (Doc. 173). Those reply briefs

---

[27] *Dukes*, 564 U.S. at 350.

[28] *Id.*

[29] Of course, any prospective class still would have to satisfy the other requirements of Rule 23. This includes commonality with regards duties implied in leases throughout the class. *See Roderick*, 725 F.3d at 1218. ("[W]e think it was the [Plaintiff's] burden to affirmatively demonstrate commonality on the implied duty of marketability."). On this point, the Court would note that Plaintiffs' argument in their brief that "all, or almost all" leases contained implied duties is not a sufficient showing of commonality.

[30] *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.").

addressed earlier motions for summary judgment that the Court denied on March 9, 2016 (Doc. 226). Therefore, the Court also denies as moot OXY's motion to strike reply briefs.

**IT IS THEREFORE ORDERED** that OXY's Renewed Motion to Decertify Class Action (Doc. 189) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Class's Motion for Partial Summary Judgment on Leases (Doc. 192) is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff Class's Motion for Partial Summary Judgment on Affiliated Sales (Doc. 194) is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff Class's Motion for Partial Summary Judgment on under *Hockett v. Trees Oil* (Doc. 196) is hereby **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that OXY's Motion to Strike Reply Briefs (Doc. 173) is hereby **DENIED AS MOOT.**

**IT IS SO ORDERED**.

Dated this 22nd day of June, 2016.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE